## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MARINER HEALTH CENTRAL, INC., *et al.*,[1] | Case No. 22- 10877 (      ) |
| Debtors. | (Joint Administration Requested) |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP, | Adv. Proc. No. _____ |
| Plaintiffs. | |
| v. | |
| UNITED STATES OF AMERICA *ex rel.* INTEGRA MED ANALYTICS LLC, | |
| Defendant. | |

## COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF

Plaintiffs, as debtors and debtors-in-possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**") and as plaintiffs in this adversary proceeding, allege, upon knowledge of their own acts and upon information and belief as to all other matters, as follows:

## SUMMARY OF THE ACTION

1.      This adversary proceeding seeks declaratory and injunctive relief extending the automatic stay to prevent the Defendant from continuing the action captioned *United States of*

---

[1]    The Debtors, along with the last four digits of each Debtors' tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273).  The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

*America ex rel. Integra Med Analytics LLC v. Mariner Health Care Inc. et al.*, Case No. 3:18-CV-00653-EMC (N.D. Cal.) (the "**Integra Action**"), a *qui tam* action bringing claims under the False Claims Act against Debtor Parkview Operating Company, LP ("**Parkview**") and certain named affiliates (the "**Non-Debtor Affiliates**") for alleged overbilling of therapy services to residents. The United States and the State of California have declined to intervene in the Integra Action.

2.      The Defendant has no prior relationship with or connection to any Debtor or the Non-Debtor Affiliates, but bases its allegations on its review of Medicare billings for services provided by Debtor Parkview and its affiliates.  All of these allegations either relate to Debtor Parkview directly or to alleged conduct involving Debtor Mariner Health Central, Inc. ("**Mariner Central**"), the party responsible for billing for services rendered by Debtor Parkview and its affiliates pursuant to the applicable administrative, clinical and operational support services agreements.

3.      If the Integra Action is allowed to continue against the Non-Debtor Affiliates: (a) Debtor Parkview faces significant estoppel, preclusion and/or evidentiary prejudice, (b) the Debtors face burdensome discovery from the Defendant and potentially from the Non-Debtor Affiliates, (c) the Debtors face significant indemnification claims from the Non-Debtor Affiliates, and (d) insurance policies and proceeds that are property of the Debtors' estates will be depleted. Accordingly, the Court should extend the automatic stay pursuant to sections 105 and 362 of the Bankruptcy Code to stay or enjoin the continuation of the Integra Action against the Non-Debtor Affiliates.

4.      This adversary proceeding is brought to safeguard and avoid irreparable harm to the Debtors' estates, ensure the integrity of the automatic stay and enable the Debtors to achieve a

DOCS_DE:240644.1 54622/001

successful reorganization.  The Debtors will also be filing a motion requesting the relief sought herein and setting forth in full the bases for such requested relief.

**JURISDICTION AND VENUE**

5.      This adversary proceeding arises in and relates to the pending Chapter 11 Cases. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.  Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.  This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

6.      The bases for the relief requested herein are sections 105(a), 362(a)(1), and 362(a)(3) of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 7001 and 7065 of the Federal Rules of Bankruptcy Procedure (the "**Bankruptcy Rules**").

7.      The Debtors confirm their consent to the entry of a final order by the Court in connection with this adversary proceeding if later determined that the Court, absent consent of the parties, cannot enter final orders or judgments in connection herewith consistent with Article III of the United States Constitution.

**PARTIES**

8.      The Debtors are the Plaintiffs in this adversary proceeding.

9.      The Defendant is the relator-plaintiff ("**Integra**") in the Integra Action.

**FACTUAL BACKGROUND**

**A.  The Chapter 11 Cases**

10.     On the date hereof (the "**Petition Date**"), each of the Debtors filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code commencing the above-captioned chapter 11 cases. The Debtors have also filed a motion requesting joint administration of these

chapter 11 cases pursuant to Federal Rule of Bankruptcy Procedure 1015(b).  The Debtors are operating as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code. No request for the appointment of a trustee or examiner has been made in these chapter 11 cases, and no official committees have been appointed or designated.

11.     The three Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies (collectively, the "**Mariner Companies**"), all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc.  Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**"), with nearly 2,200 licensed beds and approximately 3,100 employees, that provide short-term rehabilitation, comprehensive post-acute skilled care, long-term care, therapy, and other services.  For more than 30 years, the Mariner Facilities have delivered quality, affordable care to historically underserved persons and communities.  Additional information regarding the Debtors' operations, structure, liabilities, and the events leading up to the commencement of these cases is set forth in the *Declaration of Lawrence Perkins in Support of Chapter 11 Petitions and First Day Pleadings* (the "**First Day Declaration**"), which is incorporated herein by reference.[2]

12.     As described in the First Day Declaration, Parkview operates a skilled nursing facility with 121 beds located in Hayward, California (the "**Parkview Facility**"), while Mariner Central provides administrative, clinical and operational support services to Parkview and to the other Mariner Companies that operate the Mariner Facilities (collectively with Parkview, the "**Operators**").  Each Operator is party to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**") with Mariner Central, pursuant to which Mariner Central provides each Operator with among other things (a) administration of payroll and

---

[2]     Capitalized terms used but not defined herein have the meanings given in the First Day Declaration.

personnel services; (b) bookkeeping, accounting and related administrative support, budgeting, financial analysis and reporting; (c) billing and collection services; (d) handling Medicaid, Medi-Cal, and other reimbursement programs; and (e) preparation and filing of tax returns.

**B.   The Integra Action**

13.    The Integra Action was initially commenced in 2018 asserting claims under the False Claims Act and under the California False Claims Action for Medicare and Medi-Cal billings at the Mariner Facilities.  The United States and the State of California declined to intervene in July 2019, and subsequently a first amended complaint (the "**Integra Complaint**") was filed on February 19, 2020.  The Medi-Cal claims were voluntarily dismissed without prejudice on July 30, 2020.  On September 21, 2021, Parkview and the Non-Debtor Affiliates filed their answer denying the allegations of the Integra Complaint and asserting affirmative defenses thereto.  The Integra Action is presently in the initial discovery stage, and the parties have not yet exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(f).

14.    In brief, the Integra Complaint alleges that "Mariner" (defined in the Integra Complaint as all defendants collectively) submitted false or fraudulent claims to Medicare, and further violated the FCA by failing to report and return overpayments from Medicare.  Integra Compl. ¶¶ 145-146.  The Integra Complaint also alleges such actions to have been orchestrated by "management," "upper management," "ownership," and "leadership" across the Mariner Facilities.  *E.g.*, Integra Compl. ¶¶ 3, 35, 55-60.

15.    All of the allegations of the Integra Complaint relate, in relevant part, to the Mariner Facilities collectively and do not distinguish between Operators, or between Debtor Parkview and any other Non-Debtor Affiliate.  *E.g.* Integra Compl. ¶¶ 35 (". . . Mariner deliberately submitted false claims to Medicare . . ."), 79 (comparing the average "Ultra High Rehab" requirements of

1,153 patients across all Mariner Facilities with the average across all unaffiliated skilled nursing facilities, without differentiating among Mariner Facilities).  All of these allegations either relate to Debtor Parkview directly or to alleged conduct involving Debtor Mariner Central, the party responsible for billing and submitting claims to Medicare and/or failing to report and return overpayments on behalf of the Operators.  All of these allegations are inextricably intertwined across the Debtors and the Non-Debtor Affiliates and, because of Debtor Mariner Central's role in providing administrative, clinical and operational support services to the Operators, necessarily involve facts and information within the Debtors' possession or control.

**C.**  **The Debtors' Estates Will be Harmed if the Integra Action is Allowed to Continue**

16.    This Court should extend the automatic stay pursuant to sections 362 or 105 of the Bankruptcy Code to stay or enjoin the continuation of the Integra Action against the Non-Debtor Affiliates for the following reasons.

17.    *First,* the Debtors will be exposed to significant estoppel, preclusion, and evidentiary prejudice if the Integra Action is allowed to continue against the Non-Debtor Affiliates.  The conduct alleged in the Integra Complaint is the same for Debtor Parkview as for all other Non-Debtor Affiliates, and is inextricably intertwined with the conduct of Debtor Mariner Central in its provision of billing and related services to the Operators.  Any adverse judicial decision, whether on the merits or on procedural issues, with respect to Integra's claims against the Non-Debtor Affiliates will inevitably be prejudicial to and later used against the Debtors.  Similarly, any positions taken or arguments made by the Non-Debtor Affiliates in defense of the Integra Action may be prejudicial to the Debtors.

18.    *Second,* the Debtors will face burdensome discovery from Integra, and potentially from the Non-Debtor Affiliates, if the Integra Action is allowed to continue against the Non-Debtor

Affiliates.  Much of the information necessary to prosecute or defend Integra's claims, such as billing statements, financial and administrative records, or relevant emails is within the possession or control of Debtor Mariner Central (in addition to any such information within the possession or control of Debtor Parkview relating to its own residents and records that would be responsive given the collective nature of the Integra Action allegations), and employees of Debtor Mariner Central are likely to be identified as part of initial disclosures.  Thus, discovery from the Debtors is inevitable if the Integra Action is allowed to continue.  The scope of that discovery would be voluminous:  Integra's allegations could require all documents and communications relating to the treatment practices for 20 skilled nursing facilities and thousands upon thousands of patients over a multi-year period.  Such requests could total millions of pages, and the costly and time-intensive burden to respond would inevitably fall heavily on the Debtors' personnel.  Simply put, allowing discovery from the Debtors would consume significant time and resources, distract their management, eviscerate the benefits of the automatic stay, and frustrate their ability to restructure successfully.

19.     ***Third,*** Debtor Mariner Central faces significant indemnification and advancement claims, and potential cross-claims or contribution claims, if the Integra Action is allowed to continue against the Non-Debtor Affiliates.  Debtor Mariner Central is contractually obligated under each Support Agreement to indemnify and defend the counterparty Operator and such Operator's managers, employees, affiliates for any and all claims and losses from any breaches or failures by Mariner Central under the Support Agreement.  As the allegations of the Integra Complaint necessarily involve the billing and related services provided by Debtor Mariner Central to the Operators, the Non-Debtor Affiliates are entitled to indemnification and advancement from Debtor Mariner Central.  Further, even in the absence of any such contractual claims, the Non-

Debtor Affiliates may have cross-claims or contribution claims under tort theories against Debtor

Mariner Central for any billing or related services that resulted in liability in the Integra Action.

These obligations, including for costs of defense, potential settlements, and judgments, would be

a heavy burden on the Debtors' estates.

20.      ***Finally,*** property of the Debtors' estates may be depleted if the Integra Action is

allowed to continue against the Non-Debtor Affiliates. The Debtors and Non-Debtor Affiliates

share insurance coverage that may be available with respect to the Integra Action.  These insurance

policies and their proceeds are assets of the Debtors' estates.  If the Integra Action continues, the

Non-Debtor Affiliates will incur defense costs and losses that could draw down these insurance

policies, depleting property of the estates.

## NATURE OF RELIEF REQUESTED

21.      The Debtors seek a declaratory judgment, pursuant to sections 105(a), 362(a)(1)

and 362(a)(3) of the Bankruptcy Code, extending the automatic stay to prevent the Defendant from

continuing to prosecute the Integra Action, or in the alternative, an injunction against the continued

prosecution of the Integra Action pursuant to section 105(a) of the Bankruptcy Code, in either

instance during the pendency of the Chapter 11 Cases.

## FIRST CLAIM FOR RELIEF

**(Declaratory Judgment Pursuant to 11 U.S.C §§ 105, 362)**

22.      The Debtors repeat and reallege the allegations contained in the preceding

paragraphs of this Complaint as if fully set forth herein.

23.      Section 362(a)(1) of the Bankruptcy Code stays "the commencement or

continuation . . . of a judicial, administrative, or other action or proceeding against the debtor that

was or could have been commenced before the commencement of the case under this title, or to

recover a claim against the debtor that arose before the commencement of the case under this title."

8

24.     Section 362(a)(3) of the Bankruptcy Code stays "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate."

25.     Section 105(a)(1) of the Bankruptcy Code authorizes the issuance of "any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

26.     There is an identity of interest between the Debtors and the Non-Debtor Affiliates with respect to the Integra Action that warrants extending the automatic stay to prevent the Defendant from continuing the Integra Action against the Non-Debtor Affiliates.

27.     Extending the automatic stay is warranted because continuation of the Integra Action against the Non-Debtor Affiliates exposes the Debtors to significant estoppel, preclusion, and evidentiary prejudice with respect to the issues and allegations of the Integra Complaint.

28.     Extending the automatic stay is warranted because continuation of the Integra Action against the Non-Debtor Affiliates exposes the Debtors to burdensome discovery obligations that would consume significant time and resources, distract their management, negate the benefits of the automatic stay, and frustrate their ability to restructure successfully.

29.     Extending the automatic stay is warranted because continuation of the Integra Action against the Non-Debtor Affiliates exposes the Debtors to significant indemnification claims by the Non-Debtor Affiliates, further jeopardizing property of the Debtors' estates.

30.     Extending the automatic stay is warranted because continuation of the Integra Action against the Non-Debtor Affiliates will deplete any available shared insurance coverage that otherwise could be available to the Debtors for the benefit of their estates.

31.     If the Integra Action is allowed to proceed against the Non-Debtor Affiliates, the Debtors' prospects for a successful reorganization will be impaired, in frustration of the

Congressional purpose of providing the Debtors with a breathing spell from litigation pressures to pursue reorganization.

32.     Based on the foregoing, the Debtors seek a declaratory judgment extending the stay under sections 362(a)(1) and 362(a)(3) of the Bankruptcy Code to the continued prosecution of the Integra Action against the Non-Debtor Affiliates during the pendency of these Chapter 11 Cases.

## SECOND CLAIM FOR RELIEF

### (Injunctive Relief Pursuant to 11 U.S.C § 105)

33.     The Debtors repeat and reallege the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

34.     Section 105(a) of the Bankruptcy Code authorizes the Court to issue "any order, process or judgment that is necessary or appropriate to carry out the provisions of this title." 11 U.S.C. § 105(a).  Exercising this power is appropriate in circumstances where, among other things, where claims against non-debtors may ultimately affect property of the estate or where necessary to protect a debtor's ability to effectively restructure and preserve the property of the estate.

35.     The likelihood of irreparable harm to the Debtors in the absence of injunctive relief far outweighs any harm to the Defendant as plaintiff in the Integra Action.  Integra will not be harmed if enjoined from proceeding against the Non-Debtor Affiliates during the pendency of these Chapter 11 Cases.

36.     In contrast, if the Integra Action is not enjoined as against the Non-Debtor Affiliates, the Debtors could suffer irreparable harm from estoppel, preclusion or adverse evidentiary or procedural rulings impairing the Debtors' ability to defend themselves in subsequent litigation; from a finding of liability against the Non-Debtors Affiliates resulting in indemnification claims against the Debtors; from burdensome discovery that will distract the Debtors' management and employees and will frustrate the Debtors' efforts to restructure; and

from the depletion of insurance policies that otherwise may be available for the benefit of the Debtors' estates.

37.     There is a reasonable likelihood that the Debtors will be able to restructure successfully if the Integra Action against the Non-Debtor Affiliates is enjoined.  This relief serves the public interest by promoting compliance with the Congressional purpose of the automatic stay and by facilitating the Debtors' reorganization efforts.

38.     Based on the foregoing, the Debtors seek an order under section 105 of the Bankruptcy Code enjoining the continued prosecution of the Integra Action against the Non-Debtor Affiliates during the pendency of these Chapter 11 Cases.

*[ remainder of page intentionally left blank ]*

DOCS_DE:240644.1 54622/001

## PRAYER FOR RELIEF

WHEREFORE, the Debtors respectfully request as follows:

i.     declaratory judgment that the continued prosecution of the Integra Action against the Non-Debtor Affiliates is stayed under Bankruptcy Code sections 362(a)(1) and/or 362(a)(3) during the pendency of these Chapter 11 Cases; and

ii.    in the alternative, injunctive relief pursuant to Bankruptcy Code section 105(a) enjoining and prohibiting the continued prosecution of the Integra Action against the Non-Debtor Affiliates during the pendency of these Chapter 11 Cases; and

iii.   such other relief for the Debtors as is just and proper.

Dated: September 19, 2022
Wilmington, Delaware

/s/ *Laura Davis Jones*
Laura Davis Jones (DE Bar No. 2436)
Timothy P. Cairns (DE Bar No. 4228)
Mary F. Caloway (DE Bar No. 3059)
**PACHULSKI STANG ZIEHL & JONES LLP**
919 North Market Street, 17th Floor
P.O. Box 8705
Wilmington, DE 19899-8705 (Courier 19801)
Telephone:    (302) 652-4100
Facsimile:     (302) 652-4400
Email:          ljones@pszjlaw.com
                     tcairns@pszjlaw.com
                     mcaloway@pszjlaw.com

- and -

Hamid R. Rafatjoo (*pro hac vice* pending)
Carollynn H.G. Callari (*pro hac vice* pending)
David S. Forsh (*pro hac vice* pending)
**RAINES FELDMAN LLP**
1350 Avenue of the Americas, 22nd Floor
New York, NY 10019-4801
Telephone:    (917) 790-7100
Email:          hrafatjoo@raineslaw.com
                     ccallari@raineslaw.com
                     dforsh@raineslaw.com

*Proposed Counsel for the Debtors and Debtors-in-Possession*

DOCS_DE:240644.1 54622/001