## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| MARINER HEALTH CENTRAL, INC., *et al*.,[1] | Case No. 22-10877 (LSS) |
| Debtors. | (Jointly Administered) |
| MARINER HEALTH CENTRAL, INC., PARKVIEW HOLDING COMPANY GP, LLC, AND PARKVIEW OPERATING COMPANY, LP, | Adv. Proc. No. 22-50419 (LSS) |
| Plaintiffs. | |
| v. | |
| UNITED STATES OF AMERICA *ex rel.* INTEGRA MED ANALYTICS LLC, | |
| Defendant. | |

**DECLARATION OF KRISTY OWEN IN SUPPORT OF MOTION OF THE DEBTORS FOR AN ORDER EXTENDING THE AUTOMATIC STAY, OR IN THE ALTERNATIVE GRANTING INJUNCTIVE RELIEF, TO STAY PROSECUTION OF THE INTEGRA ACTION AGAINST NON-DEBTOR AFFILIATES**

I, Kristy Owen, declare as follows:

  1. I am the Director of Legal Affairs of Mariner Health Central, Inc. ("**Mariner Central**"), one of the debtors and debtors in possession (collectively, the "**Debtors**") in the above-captioned chapter 11 cases (the "**Chapter 11 Cases**"). I have held this position for 6 years.

---

[1] The Debtors, along with the last four digits of each Debtors' tax identification number, are Mariner Health Central, Inc. (6203), Parkview Holding Company GP, LLC (1536), and Parkview Operating Company, LP (7273). The Debtors' headquarters are located at 3060 Mercer University Drive, Suite 200, Atlanta, GA 30341.

1

2. I submit this declaration (the "**Declaration**") in support of the *Motion of the Debtors for an Order Extending the Automatic Stay, or in the Alternative Granting Injunctive Relief, to Stay Prosecution of the Integra Action Against Non-Debtor Affiliates* (the "**Motion**"). Capitalized terms used but not defined herein have the meanings ascribed in the Motion.

3. All facts set forth in this Declaration are based on (a) my personal knowledge gained over years of experience as an employee of Mariner Central, and/or my review of the Debtors' books and records, relevant documents, and information provided by the Debtors or their representatives, (b) information provided to me by employees of Mariner Central working under my direction, (c) information provided to me by, or discussions with, the members of the Debtors' management team or their advisors, and/or (d) my opinion based upon my experience. I am authorized to submit this Declaration on behalf of the Debtors and, if called upon to testify, I could and would testify competently to the facts set forth herein.

## MARINER CENTRAL AND ITS SUPPORT SERVICES

4. The Debtors are part of the Mariner Health Care group of healthcare services providers, consultants and holding companies, all of which are direct or indirect subsidiaries of non-Debtor Mariner Health Care, Inc. (collectively, the "**Mariner Companies**"). Certain of the Mariner Companies operate 20 skilled nursing facilities (the "**Mariner Facilities**").

5. Debtor Parkview Operating Company, LP ("**Parkview**") operates one such Mariner Facility, and Debtor Mariner Central provides certain support services to Parkview and to the other Mariner Companies that operate Mariner Facilities (collectively with Parkview, the "**Operators**"). In this manner, as is common in the skilled nursing care industry, the Mariner Companies are able to achieve operating efficiencies and economies of scale by centralizing certain services necessary for operating the Mariner Facilities.

3090039.3

6. Mariner Central provides its services to each Operator pursuant to an Administrative, Clinical and Operational Support Agreement (each, a "**Support Agreement**"). Each Support Agreement is substantially identical. Attached hereto as **Exhibit A** is a true and correct copy of the Support Agreement between Mariner Central and Almaden Operating Company, LP, one of the Operators and a named defendant in the Integra Action (as defined below).

7. Under the Support Agreements, Mariner Central is responsible for, among other things, billing and submitting claims to Medicare, and for regulatory reporting and cost reports, including but not limited to reporting and returning overpayments, on behalf of the Operators. *See* Support Agreement ¶ 2.1, *id.* Exh. A(c), (e), (f). Mariner Central is also responsible for various payroll and personnel services, including management of certain human resources programs relating to recruitment and retention, and training Operator employees. *See* Support Agreement ¶ 2.1, *id.* Exh. A(a). Mariner Central assists Operators in complying with clinical policies and procedures as well as with federal and state laws. *See* Support Agreement ¶ 2.1, *id.* Exh. A(m). Mariner Central also provides a wide range of supporting activities through operational support teams. *See* Support Agreement ¶ 2.1, *id.* Exh. A(n).

8. Mariner Central also provides in-house counsel services, and related legal and compliance support to the Operators. *See* Support Agreement ¶ 2.1, *id.* Exh. A(p). The Operators rely on Mariner Central to provide such services and do not have their own internal in-house legal functions or other internal capability to respond to discovery requests, oversee outside counsel or otherwise defend a lawsuit. Mariner Central delivers these services, and meets its own needs for such services, through an in-house legal department consisting of two attorneys, two paralegals, one legal assistant and one part-time employee (together, the "**Legal Group**"). The Legal Group

is intimately involved with and addresses all aspects of any discovery and litigation involving the Operators, including but not limited to obtaining, overseeing and managing outside legal counsel and responding to discovery requests as necessary. Mariner Central, through the Legal Group, also assists Operators with document retention policies, including compliance with privacy requirements, and coordinates offsite document storage as appropriate.

9. The Legal Group and its personnel will be central to the Debtors' restructuring efforts and path to confirmation of a plan of reorganization in these Chapter 11 Cases. For example, Darryl Ross, one of the attorneys of the Legal Group, tried portions of the Ledesma Action and is primarily responsible for the Ledesma Appeals,[2] the resolution of which is critical for the Debtors to successfully restructure. I am responsible for managing the Debtors' contracts and reconciling claims, and serve as the primary contact for our restructuring advisors in developing the Debtors' schedules and for documentation needs relating to these Chapter 11 Cases. In addition, the Legal Group is led by Devin Ehrlich, an officer of Mariner Central and an attorney who oversees the defense of various actions that are highly material to the Debtors, including but not limited to the Integra Action and the action brought by the People of the State of California,[3] as well as various professional liability, labor and employment-based actions. To date, Mr. Ehrlich has been instrumental in assuaging employee, union and vendor concerns in light of the Debtors' commencement of these Chapter 11 Cases and in assuring the Debtors' operational compliance within the parameters of the Bankruptcy Code and related first day relief. More broadly, the Legal

---

[2] The Ledesma Appeals are described in the Perkins Declaration (parags. 26, 34) and in the Debtors' pending motion for relief from the automatic stay to pursue such appeals [Case No. 22-10877, Docket No. 16].

[3] *People of the State of California v. Mariner Health Care, Inc. et al.*, Case No. RG21-095881, Superior Court of the State of California, County of Alameda (Apr. 4, 2021). This action is described further in the Perkins Declaration and is the subject of a parallel adversary proceeding.

Group plays a critical role in assuring the Operators, including Parkview, comply with the various laws and regulations that govern them, and will be critical to addressing the pending litigations in connection with the Debtors' efforts to formulate a plan of reorganization that can be supported by various stakeholders.

## THE INTEGRA ACTION

10.     The action captioned *United States of America ex rel. Integra Med Analytics LLC v. Mariner Health Care Inc. et al.*, Case No. 3:18-CV-00653-EMC (N.D. Cal.) (the "**Integra Action**") was initially commenced in 2018 asserting claims under the False Claims Act and under the California False Claims Action for Medicare and Medi-Cal billings at the Mariner Facilities.[4] The United States and the State of California declined to intervene in July 2019, and subsequently a first amended complaint (the "**Integra Complaint**") was filed on February 19, 2020. The Medi-Cal claims were voluntarily dismissed without prejudice on July 30, 2020. On September 21, 2021, the defendants filed their answer denying the allegations of the Integra Complaint and asserting affirmative defenses thereto.

11.     Attached hereto as **Exhibit B** is a true and correct copy of the Integra Complaint. As stated therein, Integra seeks to recover more than $94.58 million. Integra Compl. ¶ 1.

## MARINER CENTRAL WILL BEAR THE BURDEN OF THE INTEGRA ACTION

12.     The Integra Action is presently in the initial discovery stage. The parties have been discussing but have not yet exchanged initial disclosures pursuant to Federal Rule of Civil Procedure 26(f).

---

[4] The named defendants in the Integra Action are Mariner Health Care Inc., various Operators, and GranCare, LLC, an indirect parent of Parkview which is alleged to have been doing business as various Mariner Facilities including but not limited to the Parkview Facility (despite Parkview having been in existence and operating during certain periods at issue in the Integra Action). The Debtors and Non-Debtor Affiliates reserve all of their rights with respect to such identification of defendants.

3090039.3

13. The allegations of the Integra Complaint relate to the treatment practices of all Mariner Facilities over the 2011-2018 period. Discovery in connection with the Integra Complaint allegations could involve all documents and communications relating to the treatment practices for all subject skilled nursing facilities and thousands upon thousands of patients over this multi-year period. Such requests could easily total millions of pages.

14. Much of the information necessary to prosecute or defend the Integra Action claims, such as billing statements, financial and administrative records or relevant emails, is within the possession or control of Mariner Central. In contrast, only some of the relevant information will be within the possession or control of the Operators. This includes information within the possession or control of Debtor Parkview, which will be responsive in light of the collective allegations of the Integra Action. Overall, the substantial majority of relevant information is likely to be within the possession or control of Mariner Central.

15. In addition to this document discovery from Mariner Central, many of the persons most knowledgeable regarding the allegations of the Integra Complaint, such as the allegedly wrongful billing practices and the alleged management across Mariner Facilities, will be current or former employees of Mariner Central. Other current or former employees of Mariner Central will also have relevant information or knowledge regarding the various allegations of the Integra Complaint, such as Mariner Central employees in the finance function providing billing services.

16. As noted above, the Operators rely on Mariner Central to provide in-house legal and compliance services and do not have the capability to respond to discovery requests, oversee outside counsel or otherwise manage a defense of legal actions or proceedings. Accordingly, the Operators rely on Mariner Central to manage and coordinate defense of the Integra Action.

17.     If the Integra Action proceeds, the costly and time-intensive burden to respond to discovery, oversee outside counsel and manage the defense of the Non-Debtor Affiliates would inevitably fall heavily on Mariner Central personnel.  Such burdens will divert the Debtors' attention from and impair their ability to address issues relating to these Chapter 11 Cases, including but not limited to their ability to reconcile claims and deliver necessary reporting, to pursue the Ledesma Appeals, to work with employees, vendors and creditors dealing with the Chapter 11 Cases, and to assist with efforts to confirm a plan of reorganization.

## THE INDEMNIFICATION AND ADVANCEMENT OBLIGATIONS

18.     Each Support Agreement obligates Mariner Central to indemnify and defend its counterparty Operator and such Operator's managers, employees, affiliates for any and all claims and losses incurred in connection with any breaches or failures by Mariner Central of its obligations, or any negligent act, willful omission or fraud by Mariner Central.  *See* Support Agreement § 6.1.  Because the Integra Action asserts claims against Mariner Central for actions or failures relating to its obligations or conduct under the Support Agreements, Mariner Central is obligated to indemnify and advance costs for the Operators and their personnel on account of the Integra Action.

19.     In addition, the Mariner Central certificate of incorporation and bylaws both provide for indemnification and advancement to all persons made party or otherwise involved in any action by reason of being a current and former director and officer of Mariner Central or its predecessors, or by reason of service as a director, officer, employee or agent of any other entity at the request of Mariner Central.  If resulting in officer or employee costs or losses, the Integra Action may also lead to indemnification and advancement obligations for Mariner Central under its organizational documents.

20. These obligations, including for costs of defense, potential settlements, and judgments, will be a heavy burden on Mariner Central. All available insurance coverage for such costs has already been exhausted. To date, the legal fees, expert fees and other costs incurred by Mariner Central in defending the Integra Action have already exceeded $920,000. Such costs are expected to significantly increase as formal discovery commences and the parties are required to engage in document review, depositions, and related motion practice.

**REORGANIZATION**

21. While the Debtors lack the ability to satisfy all claims asserted against them in full after recent adverse litigation developments, with the benefit of the automatic stay and a breathing spell from litigation, the Debtors expect to be able to formulate and pursue acceptance of a confirmable plan of reorganization that preserves operations, protects patients and has the requisite creditor support.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

Executed on: October 4, 2022

By: _____
Kristy Owen
Director of Legal Affairs
Mariner Health Central, Inc.

3090039.3